UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

TRIPLE H AUTO AND TRUCK SALES, INC,   Case No. 07-13734

       Debtor.

DENISE LITTLETON, as Trustee

       Plaintiff,

vs.   Adv. No. 08-1027

RODNEY HINTON, et. al.,

       Defendants.

**ORDER GRANTING SUMMARY JUDGMENT IN PART TO DEFENDANT DECLARING $201,800 IS NOT AVOIDABLE AS PREFERENTIAL TRANSFER PURSUANT TO § 547(c)(1) AND DENYING SUMMARY JUDGMENT IN PART DECLARING $54,850 AVOIDABLE AS PREFERENTIAL TRANSFER UNDER § 547(b) IF TRUSTEE PROVES LACK OF SOLVENCY FOR DEBTOR DURING APPLICABLE PERIOD AND THAT DEFENDANT RECOVERED MORE THAN SHE WOULD IN A CHAPTER 7 CASE**

Jeffery J. Hartley and Christopher T. Conte, attorneys for Plaintiff, Denise Littleton, Chapter 7 Trustee.
Barry A. Friedman, attorney for Defendant, Susan Fillers.

    Before the Court is Defendant Susan Fillers' Motion for Summary Judgment. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has the authority to enter a final order. For the reasons explained below, the defendant's motion is granted in part and denied in part. Specifically, $201,800 is excepted from avoidance as a

1

preferential transfer under § 547(c)(1) and $54,850 is avoidable as a preferential transfer under § 547(b).

**FACTS**

Triple H Auto and Truck Sales, Inc. (Triple H") is the debtor in this case. Deanne Hinton ("Hinton") and her husband are the sole shareholders of Triple H. Defendant Susan Fillers ("Fillers") is Hinton's aunt and, therefore, an insider under the Bankruptcy Code. 11 U.S.C. § 101(31)(B)(vi).

Within a year before filing bankruptcy, the debtor, Triple H, issued checks to Fillers. Fillers also received three additional checks, after Triple H filed bankruptcy, that were issued from Hinton's personal bank account, not the debtor's.

Hinton and Fillers characterize the checks as loans. Both use the words "loans" or the borrowing of money "like [] a loan" in their affidavits. Hinton testified that when she knew the debtor had deals and sales that would bring funds into the debtor's bank account within a few days, she would send checks to the debtor's creditors to pay debts. If it appeared that any of the creditors, specifically floor-planners, might present their checks before the funds from sales were deposited into the debtor's bank account, Hinton would borrow money from Fillers to insure that the creditors' checks would be honored. At the same time Fillers advanced the debtor the needed funds, Triple H would provide Fillers with a check for repayment of the "loan". Hinton told Fillers to hold the debtor's checks for several days to insure that funds from the debtor's deals and sales had been posted by the bank.

A summary of the parties' transactions is shown below.:

2

**Check 1 -** issued to Fillers - 08/10/2007 - $25,300 - repayment of a $25,000 loan to the debtor that Fillers made the same day.

**Check 2** -  issued to Fillers - 09/08/2007- $51,050 - repayment of a $50,000 loan to the debtor that Fillers made the same day.  When Fillers presented the check for payment, it failed for lack of sufficient funds.  The debtor reissued this check on September 21, 2007, and it was honored by the bank.

**Check 3** - issued to Fillers - 10/16/2007 - $51,500 - repayment of a $50,000 loan to the debtor that Fillers made the same day.

**Check 4** -  issued to Fillers - 11/07/2007 - $52,000 - repayment of a $50,000 loan to the debtor that Fillers made the same day.

**Check 5** - issued to Fillers - 11/20/2007 - $26,000 - repayment of a $25,000 loan she made to the debtor the day.  This check to Fillers was dishonored for lack of sufficient funds.

**Check 6** - issued to Fillers - 11/22/2007 - $26,000 - repayment of a $25,000 loan that Fillers would make three days later on November 25, 2007.   This check to Fillers failed when presented for payment for lack of sufficient funds.

**Check 7** -  issued to Fillers - 12/06/2007 - $50,000 -  to cover checks 5 and 6.  Check 7 failed for lack of sufficient funds just as Check 5 and Check 6 had, and Fillers was never paid on the two loans.

**Check 8**  - issued to Fillers - 12/06/2007 - $76,800 - repayment of $76,800 that Fillers paid to AFC, a floor plan creditor, on behalf of the debtor that same day.

Triple H filed its bankruptcy petition on December 11, 2007.  After filing, Hinton issued three checks to Fillers as partial repayment of Fillers' $25,000 loan on November 20, 2007 and

3

November 25, 2007. These checks were drawn from Hinton's personal bank account.

**Postpetition check 1** - issued to Fillers - 01/09/2008 - $6,000

**Postpetition check 2** - issued to Fillers - 2/15/2008 - $1,000;

**Postpetition check 3** - issued to Fillers - 03/19/ 2008 - $1,000.

The Trustee brought suit under § 547 to avoid the transfers to Fillers that occurred within a year before the debtor's bankruptcy filing. The defendant claims the trustee has failed to prove the necessary elements of § 547(b), including that the transfers were made "for an account" and that the debtor was insolvent at the time the transfers were made, and moves for summary judgment. Fillers also asserts that, even if the court finds the elements of § 547 are met, the prepetition transfers the debtor made to her were contemporaneous exchanges for new value and/or occurred within the ordinary course of business and are excepted from the reach of § 547(b).

## LAW

A motion for summary judgment is controlled by Rule 56 of the Federal Rules of Civil Procedure, which is applicable to bankruptcy proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. A court shall grant summary judgment to a moving party when the movant shows that "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(c). In *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 106 S. Ct. 2502, 91L. Ed. 2d 2020 (1986), the Supreme Court found that a judge's function is not to determine the truth of the matter asserted or weight of the evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson*, 477 U.S. at 249-50. In making this determination, the facts are to be looked upon in the

light most favorable to the nonmoving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U. S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306 (11th Cir. 2007).

The defendant, as movant for summary judgment, bears the burden of proving there is no issue as to any material fact and that judgment should be entered as a matter of law. FED. R. BANKR. PROC. 7056(c). Since the trustee will bear the burden at trial of proving the needed elements of § 547, the movant may satisfy her burden by showing "that there is an absence of evidence to support the non-moving party's case." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993).

The trustee is seeking to avoid the transfers the debtor made to Fillers within the year prior to its bankruptcy filing pursuant to § 547 of the Bankruptcy Code. Section 547(b) grants a trustee the authority to

>  avoid any transfer of an interest of the debtor in property -
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made -
> > (A) on or within 90 days before the date of the filing of the petition; or
> > (B) between 90 days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if --
> > (A) the case were under chapter 7 of this title;
> > (B) the transfer had not been made; and
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

5

Under the Code, a transfer cannot be avoided if: (1) the debtor and the creditor intended the transfer to be a contemporaneous exchange for new value given and the transfer was in fact contemporaneous; and (2) the transfer occurred in the ordinary course of business of the debtor or made according to ordinary business terms. 11 U.S.C. § 547(c).

The court will consider whether the checks issued by Triple H fulfill the requirements of § 547(b). If the checks do meet the requirements, the court will consider whether any of the defenses to avoidance of the transfers apply.

A.

I. Are the checks issued to Fillers "transfers of an interest of the debtor in property"?

The term "transfer" is defined in 11 U.S.C. § 101(54). It is "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with . . . property [] . . . an interest in property." Some of Triple H's checks to Fillers were never cashed by Fillers. These checks did not result in any transfer of Triple H's property to Fillers. *See Barnhill v. Johnson*, 503 U.S. 393 (1992) (for purposes of preferential transfers, a transfer made by check is deemed to occur on the date the check is honored, not the date of payee's receipt of it"), *but cf., In re Wolf & Vine,* 825 F.2d 197 (9th Cir. 1987) (for purposes of determining a contemporaneous exchange, a transfer made by check is deemed to occur at the time of delivery as long as it is presented for payment within a reasonable time). Specifically, checks 5-7 were never cashed because the debtor did not have enough money in its account. Therefore, checks 5-7 are not transfers and are not subject to avoidance.

Section 547(b) requires that any transfer to be avoided must be a transfer of the debtor's property. Postpetition checks 1-3 were not shown to be property of Triple H. The money that
6

paid those checks came from Hinton. The evidence does not show that these funds were the debtor's. Therefore, postpetition checks 1-3 are not avoidable transfers. *In re Egea*, 236 B.R. 734, 738 (Bankr. D. Kan. 1999); 11 U.S.C. § 101(10)(A).

II.     Were the transfers made for the benefit of a creditor?

Fillers is a creditor of the debtor. She was owed $54,850 if the checks were avoided.

III.    Were the transfers made "on account of an antecedent debt'?

Each check was written to repay a sum of money given to Triple H by Fillers. As discussed below, some were "contemporaneous exchanges of new value" and the debt was created at the same time as the repayment. Other than the contemporaneous exchanges, check 2 was given for a contemporaneous debt, but the debt was not paid contemporaneously. Check 2 bounced and was replaced by another check 2 days later. In that case, the debt was created before the repayment. *See In re Barefoot*, 952 F.2d 795 (4th Cir. 1991) ("the dishonor of a check inevitably creates an antecedent debt owed by the debtor").

IV.     Was the debtor insolvent at the time of the transfers?

It is well settled that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." § 547(f). There was no evidence presented that rebutted the presumption. Therefore, the trustee can rely on the presumption and Fillers produced no proof to rebut the presumption as to checks 3 and 4. The court is finding that checks 3 and 4 are contemporaneous exchanges, so the presumption does not help the trustee. The transfers of checks 3 and 4 are not avoidable.

However, the presumption is of no value as to Checks 1 and 2 that are also potentially avoidable in this case. Checks 1 and 2 were written outside the 90 day period prior to filing.

The Trustee produced banking records and testimony from Hinton about the debtor's insolvency at the time of the transfers. Hinton testified at the debtor's 341 meeting that the debtor feared checks written to its floor planners would bounce if they were presented for payment before the checks from "deals" were deposited into Triple H's account. Hinton stated that in order to ensure there was enough money in the account for all checks to be paid if presented to the bank, she borrowed money from Fillers. Section 101(32) of the Bankruptcy Code defines insolvency for a corporation. It is the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation." 11 U.S.C. § 101(32). *See*, *Villamont-Oxford Associates Limited Partnership v. Multifamily Mortgage Trust 1996-1 (In re Villamont-Oxford Associates, Ltd. Partnership)*, 236 B.R. 467 (Bankr. M.D. Fla. 1999). Hinton asserts that the debtor was solvent because it had sold vehicles and knew it had money that would soon (within days) be deposited into its account. However, the debtor borrowed amounts ranging from $25,000 to $75,000 to cover its bills while it awaited proceeds from deals and sales. These transactions are evidence of insolvency. Hinton's explanation might present a picture of a business closer to solvency if the debtor had only needed to borrow a couple of hundred dollars or even a couple of thousands dollars. However, for five months in a row, the debtor needed substantial cash quickly to ensure checks it disbursed would not bounce. Further proof of the debtor's insolvency is the fact that, despite its loans, presented checks did bounce. *Friedman v. Ginsburg (In re David Jones Builder, Inc*.), 129 B.R. 682 (Bankr. S.D. Fla. 1991) (stating that "the very fact that the debtor needed an injection of $1,000,000.00 to cover an overdraft . . . is some evidence of insolvency"). The Trustee has not proven everything the court would expect to see when the issue is tried fully, but the Trustee has created a "genuine issue of material fact."

8

Therefore, summary judgment cannot be granted to the plaintiff on this point as to Checks 1 and 2.

As to Postpetition checks 1, 2 and 3, the Trustee has not proven that the checks were transfers of Triple H's property since all of the checks were drawn on Hinton's account. Since the checks were issued postpetition, they are not covered by § 547 either. There is no issue of material fact that could make the 3 checks from Hinton actionable.

V.Do the payments allow Fillers to receive more than she would receive in a chapter 7 case?

The parties produced no proof on this issue and summary judgment cannot be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

B.

I.11 U.S.C. § 547(c)(1) - Contemporaneous Exchange for New Value Defenses

A transfer may not be avoided by the trustee if it was "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor" and the transfer was in fact substantially contemporaneous. § 547(c)(1). The money Fillers transferred to the debtor did represent "new value" for the debtor. New value is defined as "money or money's worth in goods, services, or new credit . . ." § 547(a)(2). While the transactions between the debtor and Fillers look like credit transactions, and credit transactions are typically not included in the exception to § 547, "new credit may constitute new value in certain circumstances." *In re Arrow Air, Inc.*, 940 F.2d 1463, 1465 (11th Cir. 1991). As discussed above, the money Fillers loaned to Triple H did give new value to the debtor. "[A] loan which contemplates 'almost immediate repayment' constitutes a contemporaneous exchange." *In re Nolan*, 1997 WL 33479209 at *3 (quoting *In re Lease-A-*

9

*Fleet, Inc.*, 155 B.R. 666 (Bankr. E.D. Pa. 1993). The legislative history of § 547 states that a check cashed within 30 days of delivery is considered contemporaneous. *In re Sider Ventures & Services Corp.*, 47 B.R. at 408 (citing H.R. No. 95-959, 95th Cong., 1st Sess. 373 (1977), *reprinted in* 1978 U.S. Code & Cong. Admin. News 5963, 6329.

The debtor and Fillers testified that they transferred checks to each other at the same time with an intent that the exchanges would be a mere exchange of money. The parties exchanged checks with the same date written on them, at the same time, and there was only a small lapse in time (typically 2 to 5 days) before Fillers presented the debtor's checks to the bank. Based on the testimony of the parties regarding their intent, the facts surrounding the transactions, and the case law on this issue, the court concludes the parties' transactions should not be characterized as standard credit loan transactions. *Cf.*, *Pogge v. Nolan (In re Nolan)*, 1997 WL 33479209 (Bankr. C.D. Ill. 1997)(contemporaneous exchange where interest free loan was made to debtor with understanding that the loan would be repaid as soon the debtor received proceeds from refinancing his home, and the defendant was repaid 11 days later after the refinance was completed) and *In re Freestate Management Services, Inc. v. Village Associates (In re Freestate Management Services, Inc)*, 153 B.R. 972 (Bankr. D. Md. 1993)(not a contemporaneous exchange where loan was evidenced by executed promissory note and the defendant was repaid 24 days later). The checks that were issued to Fillers and honored on their first presentment to the bank are contemporaneous exchanges. These are Checks 1, 3, 4 and 8.

However, the checks that were dishonored are not contemporaneous exchanges. The dishonored checks are Checks 2, 5, 6 and 7. For purposes of § 547(c)(1), a transfer made by check is deemed to take place on the date of delivery of the check and not the date the check is

10

cashed, as long as the check is presented within a reasonable time and is honored by the bank. *In re Wolf & Vine*, 825 F.2d 197 (9th Cir. 1987); *In re Sider Ventures & Services, Corp.*, 47 B.R. 406 (Bankr. S.D. N.Y. 1985); *Matter of Georgia Steel, Inc.*, 38 B.R. 829 (Bankr. M.D. Ga. 1984). "[P]ayment of a debt by means of a check is equivalent to a cash payment *unless the check is dishonored.* Payment is considered to be made when the check is delivered for purposes of sections 547(c)(1) and (2)." *In re Standard Food Services, Inc.*, 723 F.2d 820, 821 (11th Cir.1984). When a check bounces, the transaction becomes a credit transaction and is no longer viewed as a contemporaneous exchange. *Id.*

Therefore, Checks 2, 5, 6 and 7 that the debtor paid to Fillers that failed for lack of sufficient funds do not qualify as contemporaneous exchanges. However, only the Check 2 transaction is avoidable. It is the only check of the four that was ever paid. Checks 5-7 were unpaid at the time the bankruptcy case was filed. Check 2 represents payment of a credit transaction since the original check repaying the loan was dishonored. Therefore, it is not a contemporaneous exchange and is not protected by § 547(c)(1). The other bounced checks were never honored by the bank and Fillers never received any funds from the debtor on those transactions. As to the three checks transferred to Fillers postpetition, these amounts are not funds of the debtor's and are not subject to avoidance under § 547(b). Even if the postpetition checks were covered by § 547(b), the repayments were not contemporaneous with any new value given by Fillers.

Only the amount of money actually given to the debtor can be viewed as "new value." The interest the debtor paid on the loan took money away from other creditors and was not "money or money's worth in goods, services, or new credit" to the debtor. Therefore, Checks 1,

11

3, 4 and 8 will be protected only to the extent of the principal amount of the loans made; no interest paid to Fillers is protected. *See In re Jet Florida*, 861 F.2d 1555, 1559 (11th Cir. 1988). Therefore, the $300 of interest paid on Check #1 is a preference; the $1050 paid on Check 2 is a preference; the $1,500 paid on Check #3 is a preference; and the $ 2000 paid on check #4 is a preference.

II.  Ordinary Course of Business Defense

Section 547(c) includes an exception to avoidance of transfers for payments "made in the ordinary course of business or financial affairs of the debtor and the transferee; or made according to ordinary business terms." § 547(c)(2).

The court concludes that all of the checks to Fillers were not made according to "ordinary business terms". Companies do not knowingly write checks to their creditors with insufficient funds in the bank while receiving a loan from a family member to cover the amounts of the debts for a few days. Fillers produced no evidence as to these transfers being "ordinary."

The second prong of the test is whether the transactions were "made in the ordinary course of business or financial affairs of the debtor and the transferee." Fillers has the burden to prove that these transactions were ordinary or occurred in the normal course of business for the parties. The only proof offered was that Fillers and Triple H did several of these transactions.

In order to determine a course of business between the parties, the court must look to dealings outside of the preference period. *In re Globe Holdings, Inc.*, 366 B.R. 186, 195 (Bankr. N.C. Ala. 2007). Hinton and Fillers only testified to one other loan transaction such as Checks 1-7 that occurred before the one year preference period. It occurred sometime in 2003. In cases where the parties do not have a history of dealing in the same or similar manner outside of the

12

preference period at issue, court have taken two approaches to the § 547(c)(2) defense. The first approach is to conclude "there is nothing with which to compare course of conduct during the preference period" and the conduct is not considered to be ordinary business between the parties. *Id.* at 196. The second approach is to "consider the history of dealings between the debtor and third parties; and the creditor and third parties." *Id.* at 197.

Fillers provided no evidence of prior dealing and can only remember one transaction ever occurring between the parties that was similar to these. There was no evidence presented by Fillers that it was the debtor's ordinary business practice to borrow money from other family members and exchange checks with them in the same manner as she did during the preference period. Although there is no bright-line rule for the number of prior transactions that indicate or prove a course of business between two parties, *see id.*, evidence of more than one is needed. As to Fillers check to AFC, Triple H's floorplanner, there was no evidence of similar transactions. The defendant has failed to carry her burden on proving any of the transactions are excepted from avoidance under § 547(c)(2).

## CONCLUSION

The court concludes that the Trustee has proven that § 547(b) is applicable to Checks 1 through 8, but not the three checks issued personally by Hinton postpetition. The court further concludes that the defendant has carried her burden of proving that the repayment of the principal loan amounts on Checks 1, 3, 4, and 8 were contemporaneous exchanges, but Checks 2, 5, 6, and 7 were not. No checks are covered by the ordinary course of business defense. Below is how the court intends to treat each transfer:

13

**Check 1**, issued on August 10, 2007, for $25,300, will be protected to the extent $25,000 (the new value given).

**Check 2**, issued on September 8, 2007, for $51,050, was dishonored. Repayment for this check was issued on September 19, 2007, and was again dishonored. Repayment for this check was again issued on September 21, 2007. Check 2 is not substantially contemporaneous and is not protected under § 547(c)(1).

**Check 3**, issued on October 16, 2007, for $51,500 will be protected to the extent of $50,000 (new value given).

**Check 4**, issued on November 7, 2007, for $52,000 will be protected to the extent of $50,000 (new value given).

**Checks 5 and 6**, two checks for $26,000 issued on November 20, 2007 and November 22, 2007, for repayment of two $25,000 loans from Fillers. Both of the repayments were dishonored. Fillers was never paid on these checks so there is no transfer to avoid.

**Check 7**, issued on December 6, 2007, for $50,000 was written to cover the dishonored Check 5 and Check 6. Check 7 was also dishonored and the defendant never received payment from the debtor on these two loans so there is no transfer to avoid.

**Check 8**, issued on December 6, 2007, for $76,800 was repayment of $76,800 that Fillers paid to AFC to cover debts owed by the debtor. This check covered transactions between the debtor and AFC. While this exchange was not first deposited into the debtor's bank account, it was effectually the same as every other transaction and gave "new value" to the debtor. There was no interest repaid on this transaction, and it will be protected to the extent of $76,800 (the amount of new value).

14

**Postpetition Checks 1, 2 and 3**. The three checks issued by Hinton from her personal bank account on January 9, 2008, for $6,000, February 15, 2008, for $1,000, and March 19, 2008, for $1,000 are not related to matter because they do not involve any traced funds of the debtor.

FOR THESE REASONS, the defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

IT IS ORDERED that

1. $201,800 is excepted from avoidance as a preferential transfer under § 547(c)(1).

2. $54,850 is avoidable as a preferential transfer under § 547(b) ($51,050 for the dishonored Check 2 that became a credit transaction and $3,800 for the interest paid on checks 1, 3 and 4) subject to proof by the trustee of the debtor's insolvency in the period 90 days to one year before the filing of Triple H's bankruptcy case and proof that Fillers received more than she would in a chapter 7 case.

Dated: February 2, 2009

MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

15